## OBAUGH vs. FINN.

The distinction between *verbal* and *written* slander, by which an action may be maintained for written or printed words, which, if only spoken, would not support an action, has been uniformly maintained for ages in England and the United States, and is too well established to be now departed from.

The rule is well established, that any words, written and published, throwing contumely on the party, or prejudicing him in his employment, are actionable, without any allegation of special damage.

Therefore, a publication in a newspaper, whereby one person cautions the public against another, stating him to be a plasterer by trade, who absconded on a certain day, without paying any of his numerous debts, and swindling him out of fifty-five dollars, which he had advanced him, on his promise to do a certain piece of work; that he was from Baltimore, and was said to have left that place in a similar manner; and concluding, "It is not for the small amount of money, out of which he has swindled me, that I now publicly advertise him, but to put others on their guard against his villany," is a *libel*, and actionable, without allegation of special damage.

And, in an action thereon, a demurrer to evidence being put in, admitting the publication, and that the plaintiff was a plasterer, doing business, as such, in Little Rock, these facts were sufficient to maintain the action; and the demurrer was properly overruled.

Upon the filing of a demurrer to evidence, the usual course of proceeding is, either to take a verdict for the plaintiff, conditionally, and then discharge the jury; or, to discharge the jury before any verdict is rendered, and then dispose of the demurrer: in which case, if the demurrer is overruled, and the damages are unliquidated, a new jury is summoned to assess the damages.

And though it is, in some respects, a matter of practice, yet it is error for the Court to retain the jury after the demurrer is filed, and, after overruling it, to have the damages assessed by the same jury.

It is a course of proceeding wholly unauthorized by any rule or precedent, and in derogation of the defendant's legal rights.

THIS was an action on the case, for a libel, tried in the Pulaski Circuit Court, in March, A. D. 1841, before the Hon. JOHN J. CLENDENIN, one of the Circuit Judges. Finn sued Obaugh for the publication of a notice in the Arkansas State Gazette, of the 28th August, 1839, in the following words: "CAUTION.—The public are hereby cautioned against one *John Finn*, a plasterer by trade, who absconded from this city, on the 11th instant, without paying any of his numerous debts, and swindling me out of fifty-five dollars, which I had advanced him, on his promise to do a certain piece of work. Said Finn was formerly from Baltimore; and is said to have left that place in a similar manner. It is not for the small amount of money, out of which he has swindled me, that I now publicly advertise him, but to put others on their guard against his villany.

JAMES H. OBAUGH."

The declaration charged the plaintiff in error with having falsely,

Obaugh *vs.* Finn.

wickedly, and maliciously published, and caused to be published, the libel, of and concerning the defendant, and his conduct in his trade and business, as plasterer; respecting his employment and hiring, by the defendant, without showing any special damages resulting from the libel.

The plaintiff in error pleaded the general issue, and the truth of the matter contained in the publication. To the former, the defendant joined issue, and replied to the latter, denying the truth of the matters so published, to which the plaintiff joined issue; and a jury was sworn to try the issue joined. On the trial, Finn proved the publication of the notice, as alleged, by the order of Obaugh; and then proved that he was a plasterer by trade, had served an apprenticeship at the plastering business, and followed it ever since he left school, and still follows it in the county of Pulaski and city of Little Rock; and rested his case. Obaugh thereupon presented a demurrer to the evidence, which was admitted, and the defendant joined therein. Whereupon, Obaugh, before the argument of the demurrer, moved the Court to discharge the jury; but the Court overruled his motion, and he excepted. The demurrer was then argued and overruled by the Court, and the opinion of the Court again excepted to. But no judgment was entered of record by the Court, upon the demurrer. While the case was in this situation, and during the trial, Obaugh offered to introduce testimony to the jury originally sworn in the case, and which had not been discharged, as upon an inquiry of damages consequent upon the overruling of his demurrer to the evidence; but the Court refused him leave to offer any evidence whatever, and he again excepted. And, after the case was argued by counsel, as to the inquiry of damages, and before the jury retired from the bar, he moved the Court to instruct the jury, that no recovery could be had, unless the jury were satisfied that the injury resulted to the plaintiff in his occupation or trade of plasterer; which instruction the Court refused to give, and he excepted. The jury returned into Court their verdict, finding Obaugh guilty, and that he committed the wrongs, &c., of his own wrong, and not for the causes by him pleaded, and assessing the plaintiff's damages to the sum of two hundred dollars,

upon which the Court gave final judgment for the damages so assessed, with all costs; and Obaugh sued his writ of error.

*Trapnall & Cocke,* and *Ashley & Watkins,* for the plaintiff.

The statutes of this State contain no provision in relation to demurrers to evidence. For the proceedings, and practice under them, we are indebted to the common law.

The object and effect of a demurrer to evidence, are to take from the jury, and refer to the Court, the application of the law to the testimony. 1 *Starkie,* 434–5. *Stephens' Pl.* 122. *Story's Pl.* 364, *and note.* There are only two modes of proceeding: one, to discharge the jury, and, if judgment upon the demurrer is given for the plaintiff, to issue a writ of inquiry, for the assessment of damages; and the other, to instruct the jury to render a verdict, conditionally, and subject to the judgment of the Court upon the demurrer. 6 *Comyn,* 209; *Cro. Car.* 143; *Cort vs. Birkbeck, Douglass,* 222; *Scolastica's case, Plowden,* 410; *Archbold's Practice, vol.* 1, 185; *Tidd,* 2d *vol.* 914; *Gibson vs. Hunter,* 2 *Hen. Blackstone,* 187.

If the jury render a conditional verdict, the proceedings of the trial and verdict are entered on the record, and, afterwards, the questions of law arising on the facts as found, are argued before the Court, and determined, and a final judgment rendered. *Stephen Pl.* 123.

If the jury are dismissed, and judgment upon the demurrer is given for the plaintiff, it is interlocutory; upon which the writ of inquiry issues, if the damages are unliquidated; otherwise, the judgment of the Court is final.

These are the only modes of proceeding known to the common law; and the same practice is followed in New-York, Virginia, Kentucky, Maryland, and in the Circuit Courts of the United States.

The Circuit Court has no right to change the mode of proceeding; that right, by statute, belongs exclusively to the Supreme Court; and, conceding that it has the power, by law, to do so, it certainly has no authority to make such a change as will not only vary the *modus operandi,* but essentially alter the nature, and, to some extent, defeat the object, of the proceeding.

Obaugh *vs.* Finn.

The Court erred in refusing to dismiss the jury, on the motion of the defendant, after issue was joined upon the demurrer. *White vs. Fox,* 1 *Bibb,* 374.

The Court erred in failing to render judgment for the plaintiff, upon the demurrer.

By demurring, the defendant makes a final submission of the case, and says that he will proceed no further; the progress of the case is arrested, until the demurrer is disposed of, and, upon its decision, hangs the determination of the cause. If sustained, a final judgment is rendered for the defendant; if overruled, a judgment is rendered for the plaintiff, which is final as to his right of recovery. The judgment of the Court is, that the evidence is sufficient to sustain the allegations in the plaintiff's declaration; and that the demurrer be overruled; and that the plaintiff have and recover of the defendant all the damages by him sustained, by reason of the premises in the declaration contained; but, because these damages are unknown, that a jury come, &c. &c.

Without a judgment, there is no ultimate action on the demurrer; and it must stand undetermined, or be disregarded altogether.

If the Court are bound by law to render judgment on the demurrer, and that judgment should be as before stated, all that remains to be done, is to ascertain the extent of the recovery, by an inquiry of damages; and this assessment cannot be made by the original jury, but must be done by a jury brought up upon the writ of inquiry; and, therefore, we contend that it was erroneous in the Court, to permit the original jury to assess the damages, without a writ of inquiry having issued.

And having, without judgment upon the demurrer or instruction, submitted the whole case on the part of the plaintiff, we contend that it was inconsistent and unjust, to reject the evidence of the defendant, and exclude it from the consideration of the jury.

*Pike,* contra.

When a party wishes to withdraw from the jury the consideration of the law, and its application to the fact, he may demur to the evidence. 1 *Saund. Pl. & Ev.* 495. 1 *Phil. Ev.* 297. *Gibson vs. Hunter,* 2 *H. Bla.* 206.

By this proceeding, the issue in fact closed to the jury, is exchanged for an issue in law; and, on the determination of the latter issue, either way, judgment follows, as it would have done on a verdict found for the same party, on the issue in fact. *Gould,* 479. 1 *Swift's Dig.* 771. 1 *Arch. Prac.* 174, 185, 186.

A demurrer to evidence is analogous to a demurrer to pleading; the party, from it, comes and declares that he will not proceed, because the evidence offered on the other side is not sufficient to maintain the issue. *Stephen,* 90.

A demurrer to evidence admits, not only those facts of which positive proof is made, but also those inferences and conclusions which are, by fair presumption, deducible from the facts so proved. 1 *Saund. Pl. & Ev.* 495. The party demurring must distinctly admit, upon the record, *every fact* and *every conclusion* in favor of the opposite party, which the evidence conduces to prove: in other words, every fact which the party *might* have inferred from it, in his favor. *Gould,* 487.

And when the parol evidence is certain and direct, the adverse party may demur, by entering the evidence on the record, and admitting it to be true. Where the evidence is circumstantial, and from the facts given in evidence, other facts, on which the plaintiff's right of action depends, are to be inferred, not by legal inference or presumption of law, but by reasoning or deduction, the *principal* facts or conclusions must be expressly admitted, or the Court cannot decide on the demurrer. Thus, where a number of facts and circumstances have been given in evidence, for the purpose of raising the presumption, and deducing the conclusion, that the defendant knew the payee of a note to be fictitious, and then urging, as matter of law, that, by reason of this knowledge, the defendant was bound by his acceptance, it is not enough to set out in the demurrer, and admit to be true, the facts and circumstances proved, but the fact of the *knowledge,* which the jury might reasonably infer, must be distinctly admitted. *Gould,* 488. *Gibson vs. Hunter,* 2 *H. Bla.* 187. *Cocksedge vs. Fanshaw, Doug.* 129. *Dickey vs. Adm. of Putnam,* 3 *Serg. & R.* 416. *Mans vs. Montgomery,* 11 *Serg. & R.* 328.

If the evidence offered is loose and indeterminate, the party de-

murring must state it on the record as *certain* and *determinate*, and admit it in that form to be *true*. As, if a witness states a fact to the best of his belief, or according to his impression, the demurrer must state the fact as certain, and absolutely true. *Feay vs. Decamp.*, 15 *Serg. & R.* 227. *Duerhagen vs. U. S. Ins. Co.* 2 *Serg. & R.* 187. *Ross vs. Eason*, 4 *Yeates*, 54. *Eastland vs. Caldwell*, 2 *Bibb*, 26. *Morrison vs. Berkey*, 7 *Serg. & R.* 245. *Thornton vs. Bank of Washington*, 3 *Pet.* 40, 42. *Chinoweth vs. Haskell*, 3 *Pet.* 96. *Hart vs. Calloway*, *ib.* 460.

A demurrer to evidence cannot come in after the demurrant has introduced testimony. *Hart vs. Caldwell*, *ub. sup.*

There are, commonly, three stages in the process under which facts are ascertained: First, the judge is called on to decide whether the evidence offered conduces to prove the fact to be ascertained: that is, whether it is or is not relevant. In deciding these questions, the Court gives no judgment as to the *weight* of the testimony. If it *conduces* to prove or disprove any fact in issue, or material to the issue, if the jury may legitimately infer any thing favorable to either party, the judge decides it to be relevant. To this opinion, a bill of exceptions lies.

In the second stage, the admissibility of the evidence being established, the question of *weight*, that is, *how far* it conduces to prove the fact to be ascertained, is not for the judge to decide, but for the jury, exclusively.

In the third stage, the judge declares to the jury what is the law upon the particular state of facts, in case they ascertain those facts; and the jury there compound their verdict of the law and fact so combined; or, as in case of a special verdict, the jury first ascertain the facts, and then the Court decides whether the facts, thus ascertained, maintain the issue.

Now, when the party wishes to withdraw from the jury the application of the law to the fact, and all consideration of what the law is upon the fact, he demurs to the evidence. In this case, he puts himself in exactly the same position as though the jury had already returned a special verdict, and found every fact which they might find or infer from the evidence adduced. *Jacob vs. U. States*, 1 *Breck.* 527.

Consequently, the demurrant, being in the same situation as though the jury *had* found all that they *might* find, without deciding grossly against evidence, can raise no question on the demurrer, as to the *weight* of evidence. Whether the testimony is relevant—that is, whether it *conduces, in any degree,* to sustain the issue, is the only point of which the Court can judge on the demurrer; and if the testimony clearly conduces, *in any degree,* to prove the whole affirmative side of the issue, the demurrer must be overruled. *Gould,* 480. *Gibson vs. Hunter,* 2 *H. Bla.* 205. *Fowle vs. Com. Council of Alexandria,* 11 *Wheaton,* 320. *McKinley vs. McGregor,* 3 *Whart.* 369.

When the Court decides the demurrer either way, all the questions in the case are finally determined, except as to the amount of damages. No further evidence can be afterwards introduced.

How the damages are to be assessed, is a question merely of practice, as to which there was no positive rule in England. They were sometimes assessed provisionally, by the principal jury, before they were discharged, and before the demurrer was decided; and sometimes they were discharged on the filing of the demurrer, and the damages assessed by another jury, on a writ of inquiry. *Saunders,* in his treatise on *Pl. & Ev.,* says, that the latter was the most usual course. 1 *Saund.* 496. *Buller's N. P.* 313. *Tidd,* 916. In *Scholastica's case, Plowd.* 410, the damages were assessed conditionally. In *Cort vs. Birkbeck, Doug.* 222; *Darrale vs. Newbott, Cro. Car.* 143, on a writ of inquiry, upon the authority of " *Old Book of Entries, fol.* 551, *Trespass in Arson,* 1." That either method might be adopted, see *Arch. Pr.* 175. *Gould,* 491. *Stephen,* 90.

In Connecticut, the practice has been for the Court to assess the damages when the judgment on the demurrer was given for the plaintiff. 1 *Swift's Dig.* 771. In Virginia, it has been held no error, that the jury gave an unconditional verdict before the demurrer was determined. *Bigger's Adm. vs. Alderson,* 1 *Hen. & Mun.* 54.

Unquestionably, the Circuit Court has the power to frame its own rules of practice, keeping within the limits of positive enactment, and not running contrary to them.

Moreover, decisions on matters of practice cannot be assigned for error. Amendments and matters of practice are things of discretion;

Obaugh *vs.* Finn.

and it has been often held, that they cannot be noticed in a court of errors, though brought up on certiorari. *Hart vs. Seixas,* 21 *Wend.* 40.

The proper object of a writ of error is, to remove the final judgment, with its premises, which are, the pleadings between the parties; the proper continuance of the suit and process; the finding of the jury upon an issue of fact, if any such has been joined; and, lastly, the judgment of the inferior court. These, the parties below have a right *ex debito justitiæ* to have upon the record.

The practice of the Courts below is a matter which belongs, by law, to the exclusive jurisdiction of the Court itself; it being presumed that such practice will be controlled by a sound legal discretion. It is, therefore, left to their own government alone, without any appeal to, or revision by, a superior court. *Mellish vs. Richardson,* 9 *Bing.* 125. *Ex parte Bacon & Lyon,* 6 *Cowen,* 392. *Ex parte Benson,* 7 *Cowen,* 362. *Davis vs. Braden,* 10 *Peters,* 286. *Rowley vs. Van Benthuysen,* 16 *Wend.* 377. *The People vs. Superior Court of New-York,* 5 *Wend.* 125. *Ex parte Morgan,* 2 *Chitty R.* 250.

The general distinction of law, as to the necessity of showing special damage, is, that where the natural consequence of the words is a damage, as if they import a charge of having been guilty of a crime, or having a contagious distemper; or, if they are prejudicial to a person in office, or to a person of a profession or trade, they are actionable; as where the imputation affects the person in his office, profession, or business, and where the slander is propagated by printing, writing, or signs. *Stark. on Slander,* 12. And see 6 *Bac. Abr.* 205. 2 *Dallas R.* 60.

The general rule is sufficiently simple and unembarrassed, to wit: that words are actionable that directly tend to the prejudice of any one in his office, profession, trade, or business; and they are actionable, whether the office be merely confidential and honorary, or productive of emolument. *Stark.* 100.

So any words tending to injure a merchant or *tradesman,* are actionable, whether they reflect upon the *honesty* of his dealings, his credit, or the excellence of the subject matter in which he deals. And the action extends to words spoken of a person *in any lawful em-*

*ployment* by which he may gain his livelihood. *Stark.* 108. 1 *Vent.* 275.

The humility of the employment or occupation is no objection to the action, either in law or reason; and the action will lie for malicious misrepresentations of the characters of menial servants. *Stark.* 109. *Seaman vs. Bigg,, Cro. Car.* 480. *Terry vs. Hooper,* 1 *Lev.* 115.

The question in all such cases is, do the words, *in any degree,* prejudice the party in his employment. If they do, they are actionable. The question of damages is a question for the jury. *Stark.* 110. The words, in such cases, are actionable, if they relate to the plaintiff's *integrity, knowledge, skill, diligence, credit,* or the subject matter in which he deals. *ib.*

Where the words are spoken of a merchant, they must be spoken with direct reference to his trade. It is actionable to call a tradesman a rogue or cheat, in reference to his trade. *Stark,* 113. *Burr,* 1,688.

But words implying a want of credit are actionable, whether spoken in direct reference to the trade or business or not; and are actionable when applied to a person carrying on a business purely mechanical. *Squire vs. Johns, Cro. Jac.* 585. And any words which, in common acceptation, imply want of credit, are sufficient. *Davis vs. Lewis,* 7 *T. R.* 17. *Sebly vs. Carrier, Cro. Jac.* 345. *Morris vs. Langsdale,* 2 *Bos. & Pul.* 84. *Lewis vs. Hawley,* 2 *Day,* 495. *Hall vs. Smith,* 1 *M. & S.* 287. *Chapman vs. Lamphire,* 3 *Mod.* 155. *Dobson vs. Thorstone,* 3 *Mod.* 112. 3 *Salk.* 326. *Holt on Libel,* 217, 218, 219.

This is equally the law in the United States. *Ostrom vs. Colkins,* 5 *Wend.* 263. *Tobias vs. Harland,* 4 *Wend.* 537. *Sewall vs. Catlin,* 3 *Wend.* 291. *Mott vs. Comstock,* 7 *Cowen,* 654. *Demorest vs. Haring,* 6 *Cowen,* 76. *Burtch vs. Nicholson,* 17 *J. R.* 217.

We do not intend to discuss the whole doctrine as to libel. The difference between the two has been constantly and uniformly declared with approbation in England and America. For this distinction, and the reasons, see *Holt,* 221, 222, 223. *Stark.* 126, 127, 128, 129, 130, and onward, and the thousand authorities quoted. *Skinn.* 123. 2 *Wils.* 204. 12 *Co.* 35. 2 *Brownl.* 151. *Hard.* 470. 2 *Show,* 314. 3 *Salk.* 226. 2 *Wils.* 403. 1 *T. R.* 748. 6

Obaugh *vs.* Finn.

*T. R.* 162.   1 *Bos. & Pul.* 331.   19 *J. R.* 367.   5 *Binn.* 340.   5 *Binn.* 218.

The rule is now unalterably settled, that any writings, pictures, or signs, which derogate from the character of an individual, by imputing to him either bad actions or vicious principles, or which diminish his respectability and abridge his comforts, by exposing him to disgrace and ridicule, are actionable, without proof of special damage: in short, that an action lies for any false, malicious, and personal imputation, effected by such means, and tending to alter the party's situation in society for the worse. *Stark.* 140.

Every thing written of another, which holds him up to scorn and ridicule, that might reasonably be considered as provoking him to a breach of the peace, is a libel; and all such written abuse as may be fairly intended to impair him in the enjoyment of society, or to throw a contempt on him which might affect his general fortune and comfort. *Holt,* 223, 224.

Scandalous matter is not necessary to make a libel.   If an ill opinion is induced to be had of the person libelled, or the writing tends to make him contemptible or ridiculous, an action lies. *Cross vs. Tilney,* 3 *Salk.* 226. *Skinner,* 124. *Zenobio vs. Axtell,* 6 *T. R.* 162. *Bell vs. Stone,* 1 *Bos. & Pul.* 331. *Janson vs. Stuart,* 1 *T. R.* 748. *Villars vs. Mousley,* 2 *Wils.* 403. *Lyle vs. Clason,* 1 *Caine's R.* 581. *Austin vs. Culpepper,* 2 *Show.* 313. *Holt on Libel,* 229 *n.* *Thornley vs. Lord Kerry,* 4 *Taunt.* 355. *Genet vs. Mitchell,* 7 *J. R.* 120. *McCorkle vs. Binns,* 5 *Binn.* 340. *Steele vs. Southwick,* 9 *J. R.* 214. *Coleman vs. Southwick,* 9 *J. R.* 45. *Southwick vs. Stevens,* 10 *J. R.* 443. *King vs. Root,* 4 *Wend.* 136. *Hillhouse vs. Dunning,* 6 *Conn. R.* 391. *The State vs. Avery,* 7 *Conn. R.* 268.

*Hempstead & Johnson,* in response.

The Court manifestly erred in refusing evidence to be adduced in mitigation of damages.

On a demurrer to evidence, where it is manifest the merits of the cause have not been tried, this Court is not compelled to render final judgment, but may, in its discretion, remand the cause, that a

*venire facias de novo* may issue. *Gazzam, Heard, and Wragg vs. The Bank of Mobile,* 1 *Ala. Rep., new series,* 268.

When a judgment, rendered on demurrer to evidence, special verdict, or case agreed, is reversed, the proper practice is to remand, in order that the primary tribunal may, in the exercise of its discretion, award a new trial, or place the parties in such a condition as will advance the justice of the case. *Edmonds vs. Edmonds, ib.* 401.

The office of a demurrer to evidence is, to withdraw from the jury the consideration of the facts offered in evidence to maintain the issue which the jury were impanneled to try, and to offer them to the Court. It is, in effect, the substitution of the Court for the jury. *Curry vs. the Bank of Mobile,* 8 *Porter,* 360.

In case of a demurrer to evidence, it seems to be the most correct practice, on account of its despatch, to direct the jury to assess the damages at the time the demurrer is taken, to be imposed in the event the demurrer is overruled. *A new jury, however, may be impanneled to assess the damages;* and either mode is legal. 7 *Porter,* 420.

Evidence spread on the record, in a case in which a demurrer is offered to evidence, cannot be allowed to go to a second jury impanneled to assess damages, after the demurrer to evidence is overruled. *ib.* 420.

[Mr. Hempstead also argued, at considerable length and with great research, that the question as to the distinction between verbal and written slander, was, in this State, an open question; and that, in reason and justice, no such distinction ought to be sustained.]

*By the Court,* RINGO, C. J.

Several questions are presented by the record and assignment of errors; one of which is, that the Court erred in overruling the demurrer to evidence. The argument in support of this objection rests upon the assumption, that the publication charged in the declaration is not in itself libellous, and will not support an action at law, unless special damages be alleged and proved. And a great number of adjudged cases have been cited to show that the language contained

Obaugh *vs.* Finn.

in the publication, if uttered verbally, would not, in law, be deemed slanderous, or support an action; and we are urged to disregard the well-known distinctions between libels and slander, and to hold, that no action can be maintained for the publication of language which, if only verbally spoken, would not support an action. We have carefully examined the cases cited, and, upon deliberate consideration, come to the conclusion, that the law, in this respect, is too well established to be now questioned or departed from. The distinction has been uniformly maintained for ages, in the courts of England, and has been recognized in most, if not all, of the United States. And language, though not actionable, if merely spoken, has, in many cases, been adjudged libellous, when written and published. And the rule appears to be well established, that any words, written and published, throwing contumely on the party, or prejudicing him in his employment, are actionable.

That the language used in the publication, upon which this action is founded, is such as to bring the individual, of whom it was published, into contempt, ridicule, and disgrace, and injure him in his employment or trad e, there can, in our opinion, be no doubt. It is, therefore, within the rule above stated, and is actionable, without any allegation of special damages arising therefrom. The testimony proved the publication, by the order of Obaugh, as stated in the declaration, and that Finn was a plasterer by trade, doing business as such, in the city of Little Rock and county of Pulaski. The demurrer admitted the truth of these facts, and they were unquestionably sufficient in law to maintain the action. And, therefore, there was no error in the judgment of the Court overruling said demurrer.

But it is insisted, that the Court erred in refusing to discharge the jury, on the motion of the plaintiff in error, upon his demurrer to the evidence being filed and received by the Court, and in retaining it until the demurrer was adjudicated and disposed of by the Court, and then suffering them to pass upon or try the issue joined, notwithstanding his interposition of the demurrer to the evidence.

The authorities cited in the briefs, clearly show, that the object and effect of a demurrer to evidence are, to take from the jury, and refer to the Court, the application of the law to the testimony; and,

16

where the testimony is, upon such demurrer, adjudged insufficient in law to maintain the action, it is equally certain, that a final judgment must be pronounced thereupon in favor of the defendant; and the like judgment must be given for the plaintiff, if the demurrer be over-ruled, in all cases where the subject-matter of the controversy is such as not to require the intervention of a jury, for the purpose of ascertaining or assessing unliquidated damages. These rules appear to be well settled, and are not questioned by either party in this case.

It is also admitted, that the usual course of proceeding, upon a demurrer to the evidence being filed, is either to take a verdict for the plaintiff, conditionally, and then discharge the jury; or, to discharge the jury before any verdict is rendered, and then dispose of the demurrer; and if, in the latter case, the demurrer should be decided in favor of the plaintiff, and the damages to which he is entitled be un-liquidated, a writ of inquiry is awarded, and another jury impanneled thereupon, to inquire of and assess them. And the latter course of proceeding, upon a reference to the books and cases cited in the briefs, appears to be the most usual; but it is said that either would be regular; and cases are cited, by the defendant in error, to prove that, in some of the American States, a course of proceeding, different from either, has been indulged, and such departure therefrom held to be no error. Besides, he insists that it is a mere matter of practice, which may be modified or changed by the Circuit Court at will, and so be regulated according to its sense of propriety or convenience. This argument is plausible; and we have experienced some difficulty in coming to a satisfactory conclusion upon the question. Our deliberations, however, have resulted in the opinion, that, notwithstanding it is in some respects a matter of practice, yet, it is a practice so interwoven with the law, that it can neither be disregarded nor changed at the discretion of the Court. Nor do we consider it any more a matter of mere practice than the filing of the demurrer itself; which the Court, under some circumstances, in the exercise of a sound legal discretion, may certainly refuse to receive; yet, when the testimony is in every respect certain, or in writing, the defendant would, as we apprehend, have a legal right to demur, if he desired to withdraw it from the consideration of the jury. And, in such case, the Court, in

Obaugh *vs.* Finn.

the exercise of any discretion with which it is vested, would not be justified in refusing to receive it, or compel the plaintiff to join therein.

It may be regarded as in many respects similar to the right of filing or amending the pleadings in a cause, the admission or rejection of which anciently depended upon the practice of the courts, and was regulated by nothing but their discretion. But many of the rules of practice, so established, have long since become incorporated with the common law, so as to constitute a part thereof—thus forming not merely rules of practice, but constituting principles of law, binding upon the courts as well as the parties, and establishing legal remedies, prescribing their form and order, as well as the manner of conducting them. Take the order of pleading as an illustration; and inquire by what authority the courts, wherever the common law has been adopted, refuse to receive or regard pleas to the jurisdiction of the Court, or in abatement of the suit, after a plea in bar of the action has been filed. The answer, we apprehend, must be, that the law forbids such defence, after a defence has been interposed in bar of the action; yet, the order of pleading was originally nothing but the practice adopted by the courts themselves, for convenience and the better administration of justice, which, in the course of time, became parcel of the common law. And, therefore, a party failing to observe the order so established, often loses the advantage of a defence, of which he could have availed himself, if he had interposed it at a proper time and in legal form; and so it has been uniformly ruled by this Court. And cases may be found, where judgments have been set aside, because the established order of pleading had not been observed; the judgment having been given upon some defence, which, according to that order, had been waived, or superseded by the interposition of some defence posterior to it in the legal order of pleading. Yet, this could not be, if the order of pleading depended upon the simple discretion or mere practice of the Court, as contradistinguished from the rules of practice and order of proceeding prescribed by law. Such, also, is the character of the rule which prescribes the order of proceeding upon the filing of a demurrer to evidence; it is a rule of practice established by law, which the Court and parties are bound to observe. In the present case, the rules of proceeding established in such case,

have been entirely departed from, and a course of proceeding, wholly unauthorized by any rule or precedent, has been adopted, with the sanction of the Circuit Court, without the assent of the plaintiff in error, and in derogation of his legal rights; and, therefore, there is error in the proceeding and judgment against him, of which he may well complain, although it is impossible to know what would have been the result, if the proceeding had been conducted according to law. He had a legal right to require that it should be so conducted; or, in other words, he was entitled to a legal trial, which was refused him by the Court.

And, therefore, it is unnecessary to determine such other questions as are presented by the record and assignment of errors, as they will probably never arise upon another trial of the case.

Judgment reversed.