WAKIN *v.* WAKIN.

Opinion delivered June 28, 1915.

1. WITNESSES—AGE—COMPETENCY—UNDERSTANDING OF OATH.—A witness who is nineteen years of age will be presumed to have common discretion and understanding, until the contrary appears. When a witness by his testimony shows that he has sufficient

natural intelligence and had sufficient understanding to apprehend the nature of an oath, he should be allowed to testify.

2. WITNESSES—COMPETENCY—DISCRETION OF COURT.—The question of a minor's competency is addressed to the discretion of the trial judge, and in the absence of a clear abuse or manifest error, the judicial discretion is not reviewable.

3. TORTS—INDUCING BREACH OF CONTRACT.—One H. was under indictment, and to procure his release, pending trial, A. executed a bond to the State conditioned upon H's. appearing for trial. A. procured B. also to execute the bond, mortgaging certain property to B. to secure him from any loss. One W. induced H. to disappear. *Held*, W. was liable in an action by A. for resultant damages.

Appeal from Miller Circuit Court; *George R. Haynie*, Judge; affirmed.

### STATEMENT BY THE COURT.

Appellees sued the appellant, alleging in substance, that one Hamisey was, at the May term, 1913, of the district court of Bowie County, Texas, in seven different indictments, charged with the illegal sale of whiskey, which was a felony under the Texas laws, and bail was fixed in each case at $100; that Hamisey had executed bond for his appearance; that the appellee Davis Wakin was the step-father and appellee Sarah Wakin the mother of Hamisey; that appellees at the instigation of appellant procured two persons named Kuhl to become surety on Hamisey's bond, and in order to indemnify them as sureties on the bonds, appellees at appellant's instigation, executed and delivered to the Kuhl's a mortgage or deed of trust on a certain brick building in Texarkana; that the bonds constituted a contract between Hamisey and the Kuhls by the terms of which Hamisey was to appear at the district court of Bowie County, Texas, and in case of his failure to do so the Kuhls had contracted to pay to the State of Texas the amount mentioned in the bonds; that by reason of the contract of indemnity between the Kuhls and the appellees, appellees were to indemnify the Kuhls in case there was a forfeiture of the bonds by Hamisey, and therefore appellees were the real parties in interest; that Hamisey was released from prison upon

the execution of these bonds, and that the appellant Wakin conspired with him to have him leave the jurisdiction of the court of Texas and thereby forfeit his bond; that he did leave the State of Texas and forfeit his bond; that appellees endeavored to apprehend Hamisey and to bring him before the court, and in their effort they necessarily expended the sum of $667.02; that from June 15, 1913, when Hamisey fled, until December 1, 1913, when he was apprehended, appellees had suffered a loss from their business in their efforts to apprehend Hamisey in the sum of $1,000.00. They set forth that they had expended in all $1,696.40, which represented the actual damages they had sustained by reason of the forfeiture which they allege that the appellant had caused, and prayed for judgment in that sum, and for $1,000.00 punitive damages which they alleged they had suffered by reason of appellant's willful act in inducing Hamisey to leave the jurisdiction of the Texas court and to forfeit his bond. The answer denied the allegations of the complaint.

The undisputed evidence showed that the bonds were executed in the manner alleged in the complaint; that the Kuhls were sureties on the bonds; that appellees executed a deed of trust to the Kuhls on property which was ample security to them for the amount they were obliged to pay in case of a forfeiture of the bonds; that the deed of trust was executed to secure the Kuhls against liability by virtue of becoming sureties on the bonds of Hamisey; that judgments of forfeiture were taken on the bonds, and that on the surrender of Hamisey these judgments were set aside, and that the costs of the proceedings were $29.40.

Appellees, over the objection of appellant, were permitted to read the deposition of Hamisey. The ground of objection urged was that Hamisey was not a qualified witness. Hamisey was asked if he understood the meaning of an oath and answered that he did; that he understood that an oath meant for the witness to swear; that it meant for him to swear to tell the truth. He was asked if he swore to a lie what the result would be, if any, and

answered, "I don't know what the result would be; it would be life in the penitentiary."

The testimony of Hamisey tended to show that he was 19 years of age, and that the appellee Sarah Wakin was his mother. He was arrested in Texarkana for the illegal sale of whiskey and was placed in jail on that charge. His mother fixed up his bond and he was released from jail. He came back to Texarkana, Texas, and stayed with his mother eight or nine days. He had no money. In Texarkana the appellant told the witness that they were going to send him to the penitentiary for five years, and appellant said that he would give witness money for him to leave town; that appellant told witness to go back to the old country; told him to see a certain party in New York who would give him money to go to the old country. Appellant gave witness $25.00 and told witness to see appellant's brother George, when he got to Little Rock, who would also give him $25.00. The witness left that night and went to Little Rock and went to see appellant's brother George, who was running a saloon for appellant, and he bought a ticket for witness to St. Louis by way of Memphis.

Before witness was placed in jail at Texarkana he sold whiskey for appellant in Texarkana, Arkansas and Texas. The appellant delivered the whiskey to him and he sold it at 25 cents a pint.

The appellees then introduced testimony tending to show the amounts that had been expended by them in endeavoring to procure the arrest of Hamisey after he fled the State of Texas. It is not contended by the appellant that the sums were not expended by the appellee in an effort to secure the arrest and return of Hamisey to the State of Texas in order to have the forfeiture set aside.

The appellant, in his testimony, stated that he was the owner of a saloon in Little Rock, run by his brother, George Wakin. He did not furnish Hamisey with whiskey to peddle on the Texas side and had nothing to do with the making of his bonds. He had pleaded guilty in

seven or eight cases in Miller County for taking orders for intoxicating liquors. George Wakin testified that appellant did not tell him to give Hamisey any money.

The court instructed the jury to the effect that if appellant did induce and encourage Hamisey to leave the State and forfeit his bonds, by which the appellees were damaged as alleged in their complaint, that the verdict should be in their favor, and instructed them to take into consideration, in measuring the damages, the expenses that the appellees had incurred in procuring the arrest of Hamisey and his return to Texas, and any costs for which they were liable on account of the forfeiture proceedings.

There was a general objection to this instruction, which was overruled. The appellant requested a peremptory instruction, which was overruled.

The jury returned a verdict in favor of the appellees in the sum of $349.96. Judgment was rendered in their favor for this amount and appellant has duly prosecuted this appeal.

*M. E. Sanderson* and *John N. Cook,* for appellant.

1. Sam Hamisey was incompetent to testify; he did not understand the obligation of an oath, and had no knowledge of a place of rewards or punishment. 25 Ark. 92; 93 *Id.* 138; 109 *Id.* 345.

2. The contract was not made for the benefit of appellants, and they were strangers to it, and the breach of it was not the proximate cause of the injury. They could not sue on it. 43 S. E. 419; 60 S. W. 1058. The money they spent was to protect the bondsmen, but their liability to the bondsmen was in no way connected with the liability of the bondsmen to the State of Texas. 98 Cal. 578; 15 S. W. 57; 43 S. W. 419; 66 Ark. 68. As to remoteness and non-liability see 56 Ark. 279; 55 *Id.* 510; 76 *Id.* 430.

3. Appellees' attorney's closing argument was clearly improper.

*Louis Josephs, R. P. Dorough* and *Will Steel,* for appellees.

1. Sam Hamisey was a competent witness. 93 ARK. 158; 25 *Id.* 92.

2. The breach of the contract was the proximate cause of the injury. Persons who aid another to violate a contract, even with a stranger, to his injury, are liable. 86 Ark. 130; 38 Cyc. 508; 64 Ark. 221.

3. The objection to the argument of attorney is frivolous. But if improper, it was harmless.

WOOD, J., (after stating the facts). (1) Sam Hamisey was 19 years of age. It must therefore be presumed that he had common discretion and understanding until the contrary appears. There is nothing in the record to show to the contrary. But his testimony does show that he had sufficient natural intelligence and had sufficient understanding to apprehend the nature and effect of an oath. When such is the case, a witness should be allowed to testify. See *Flanagin* v. *State,* 25 Ark. 92.

(2) The question of this witness' competency was addressed largely to the discretion of the trial judge, and "in the absence of clear abuse or manifest error the judicial discretion is not reviewable." *Crosby* v. *State,* 93 Ark. 158.

The presumption of competency was not overcome by an examination of the witness touching his sense of a moral responsibility to tell the truth under oath, and nothing was elicited tending to show that the witness did not understand that he was under a moral as well as a legal obligation to tell the truth under oath. The court did not err therefore in admitting his testimony.

(3) The appellant contends that the court should have given a peremptory instruction in his favor. He contends that appellees were wholly disconnected with the contract which they alleged was broken and that a violation of the contract by Hamisey was not the proximate cause of any damage to them. In *Mahoney* v. *Roberts,* 86 Ark. 130, we held: "That persons who aid another to

violate a contract with a stranger, whether for the purpose of injuring the latter or for the purpose of obtaining some benefit for themselves at the latter's expense, to his injury, are guilty of an actionable wrong and are liable for damages.''

The contract between Hamisey and the Kuhls and the State of Texas, evidenced by the bonds and the contract between the Kuhls and appellees were so interrelated that a violation of the obligations of the bond by a failure of Hamisey to make his appearance necessarily matured the liabilities of the appellees to the Kuhls under the mortgage. The testimony tended to show that the appellant and Hamisey knew that these contracts were made at the same time, and that they knew the purpose of both contracts. Therefore, when appellant induced Hamisey to violate the provisions of his bonds, as the jury were warranted in finding, this violation was the proximate cause of the damage which the appellees sustained by reason of the violation of such bond and for which, under the doctrine in *Mahoney* v. *Roberts, supra,* the appellant was liable. The instructions of the court were therefore correct.

We have considered the objection urged to certain remarks of counsel and find no reversible error in the ruling of the court concerning the same, and we do not deem them of sufficient importance to set forth in the opinion.

The judgment is correct and it is accordingly affirmed.

McCulloch, C. J., (dissenting). The majority of the judges hold appellants liable in this case upon the doctrine that a person who induces one of the parties to a contract to break it is liable to the other party for any damages resulting from such breach. That doctrine was first announced by one of the English courts in the case of *Lumley* v. *Gye,* 2 El. & Bl. 216, and has since been followed by a great many of the courts in England and in America. It was followed by this court in the case of *Mahoney* v. *Roberts,* 86 Ark. 130. It is, I think, pushing

the doctrine too far to apply it to the facts of the present case. It has never been applied except in cases where one of the parties to an express contract was induced to break the contract. It is unsafe to carry it to the extent of holding that liability is created by inducing one to break an implied contract, for there is always an implied contract to discharge a legal duty, and to carry the doctrine far enough to apply to contracts of that sort would be too remote. There was no contract, either express or implied, between appellees and Hamisey for the latter to break. Hamisey made no express contract with any one, not even with the Kuhls, the sureties on his bond. If any contractual rights between the two existed, it was merely an implied contract. But the only contract which appellees entered into was with the Kuhls, and that was a personal one to indemnify the latter against loss on the bond which they executed for Hamisey's appearance. There being no contract between appellees and Hamisey, the doctrine of the cases just referred to has no application.

Appellant's alleged conduct in inducing Hamisey to run away did not cause a breach of any contract with appellees. That conduct was entirely too remote to be the subject-matter of an action sounding in tort. One of the decisions of this court is, I think, in point on that question. In *Gerson v. Slemons,* 30 Ark. 50, this court held (quoting from syllabus) that "Where two persons contract with reference to an event that is contingent upon the act of a stranger, the latter can not be held liable for damages resulting from a failure of the contract, though it may have grown out of his omission to perform the act upon which the contingency depended." Now, the application of that decision to the facts of the present case is this: Hamisey, by running away, did not render himself liable to the appellees, even though the loss resulted by his omission to appear according to the terms of his bond. It follows, therefore, that if Hamisey himself would not be liable, *a fortiori,* appellants would not be liable for inducing him to run away.

The question of remoteness is illustrated by a decision of the Massachusetts court which I think is in point. *Anthony* v. *Slaid,* 11 Met. (Mass.) 290. The plaintiff in that case was the contractor for the support of the poor of a certain town and sought to recover damages from the defendant on the grounds that the latter's wife (for whose acts he was responsible) had assaulted and injured one of the town paupers, thereby increasing the expenses of the plaintiff in performing his contract. The court, in denying liability, said: "It is not by means of any natural or legal relation between the plaintiff and the party injured, that the plaintiff sustains any loss by the act of the defendant's wife, but by means of the special contract by which he had undertaken to support the town paupers. The damage is too remote and indirect. If such a principle be admitted, we do not see why the consequence would not follow, as stated in the argument for the defendants, that in a case where an assault is committed, or other injury is done to the person or property of a town pauper, or of an indigent person, who becomes a pauper, the town might maintain an action, with a *per quod,* for damages."

Another reason why appellees are not entitled to recover is that appellees were not required to make good their bond of indemnity by paying the amount thereof. Their damage accrued by reason of expenses incurred in bringing Hamisey back, so that there would be no liability on the bond. That state of the case renders the alleged wrongful act of appellants still more remote from plaintiff's injury and still further lessens ground for liability.

I am unable to bring myself to the conclusion that there is any liability in this case, and I therefore record my dissent.