FRED MASON *v.* L. J. FUNDERBURK ET AL

5-4997                                    446 S. W. 2d 543

Opinion delivered November 3, 1969

*Terral, Rawlings, Matthews & Purtle,* for appellant.

*Smith, Williams, Friday & Bowen; By: Robert V. Light,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant, plaintiff below, seeks reversal of a summary judgment, asserting error in the court's finding that there was no genuine issue of material facts. We agree with the trial court that there were no genuine issues of fact as to some of the appellees; who were defendants below, but find that there are genuine issues of material facts as to others. In so holding, we apply the well-established rules that the burden to show that there is no genuine issue of material fact is upon the moving party, that all doubts must be resolved against the judgment, that all presumptions and inferences must be resolved against the movant and that, in a case in which fair-minded men may honestly differ about the conclusions to be drawn from the testimony, a summary judgment should be denied.

Appellant was employed by appellee Field Enterprises Educational Corporation as its district manager by a contract entered into on June 19, 1963. He was employed to sell certain encyclopedias, dictionaries and other such publications, on a commission basis, in the northeastern part of the state. The contract was subject to cancellation upon thirty days' notice in writing given by either party. The controversy from which this litigation arose began when appellant was elected to the Calico Rock School Board in 1966. Ultimately appellee Field Enterprises Educational Corporation acting through appellee L. J. Funderburk, its state manager, terminated the contract as of August 24, 1967.

Subsequently, appellant instituted this action

against Funderburk; Field Enterprises Educational Corporation; Dr. Dale Hudson and John Kron, two of the other members of the Calico Rock School Board; Dr. Dean Hudson, Superintendent of the Mountain Home Public Schools and a brother of Dr. Dale Hudson; Neill Hudson, Principal of the Atkins High School, another brother of Dr. Dale Hudson; and Jack B. Connor, Principal of the Calico Rock Public Schools. The complaint is couched in broad general language alleging that appellees conspired to deprive him of his rights under the contract and to earn a livelihood, to injure him and to deprive him of his means of livelihood. He alleged damages as a result of conversations, letters and other activities of appellees which he alleged to be false and calculated to injure his character and reputation. He asserted that the appellees intentionally publicized false, malicious and slanderous material and wrote letters and held conversations by which they procured dismissal from his employment and caused him to be held up to public contempt, ridicule, embarrassment and humiliation.

Appellees filed a motion to require appellant to make his complaint more definite and certain but followed discovery procedures rather than pressing this motion. Other than the motion for summary judgment granted by the court, appellees have filed no other pleading.

Appellant has not, either in his pleadings or in his brief in this court, made any attempt to characterize or identify his cause of action. His brief here has been of little assistance, as it cites no authority to indicate what, if any, cause of action is supported by the facts disclosed. Appellees have characterized the cause of action as being one based upon the common law action for civil conspiracy or for defamation of character. We shall consider whether there are issues of material facts on the causes of action suggested by appellees, as well as a possible cause of action for damages for wrongful

inducement to cause Field Enterprises not to continue a business or employment relationship with appellant.

A review of authorities pertaining to a cause of action for defamation would serve no useful purpose. Consideration of the rules of law governing the other causes of action, however, is advisable in determining whether appellees have clearly shown that there is no material issue of fact. Under Arkansas law, a malicious and wilful interference with contractual rights and relationships of another has been recognized as an actionable tort. *Mahoney* v. *Roberts,* 86 Ark. 130, 110 S. W. 225; *Johns* v. *Patterson,* 138 Ark. 420, 211 S. W. 387; *Hogue* v. *Sparks,* 146 Ark. 174, 225 S. W. 291; *Ketcher* v. *Sheet Metal Workers International Association,* 115 F. Supp. 802 (E. D. Ark. 1953); *Tollett* v. *Mashburn,* 183 F. Supp. 120 (W.D. Ark. 1960) aff'd. 291 F. 2d 89 (8th Cir. 1961). See also *Dale* v. *Hall,* 64 Ark. 221, 41 S. W. 761; *Wakin* v. *Wakin,* 119 Ark 509, 180 S. W. 471, According to the Supreme Court of the United States a cause of action based on interference with another's contract with a third person without legal justification has been recognized at least since *Lumley* v. *Gye,* 2 El. Bl. 216, 118 Eng. Rep. 749 (Q. B. 1853). *Arkansas* v. *Texas,* 346 U. S. 368, 74 S. Ct. 109, 98 L. Ed. 80 (1953). The theory allowing the recovery of damages for unlawful interference with contractual relationships will also support the recovery of damages from one who, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, at least where the means of inducement are tortious. See Restatement of Torts § 766, et seq., and Comments (1939); *Calbom* v. *Knudtzon,* 65 Wash. 2d 157, 396 P. 2d 148 (1964). This rule applies to situations in which a party induces or otherwise purposely causes another not to employ a third person as well as the situation in which the party induces or purposely causes an employer to terminate a relationship with an employee, even though the employment was at will. Restatement of Torts § 766, Com-

ment c. (1939). It has long been recognized in many American jurisdictions that one who, maliciously and without justifiable cause by means of false statements, threats or putting in fear or, perhaps, by means of malevolent advice or persuasion, induces an employer to discharge an employee is liable in an action of tort to the employee for the damages thereby sustained, regardless of whether the employment was for an unexpired fixed term or terminable at the will of the employer. 2 Cooley on Torts 182, § 226 (4th Ed. 1932). We find the following language of the Supreme Court of Missouri in *Downey* v. *United Weatherproofing, Inc.* 363 Mo. 852, 253 S. W. 2d 976 (1953), to be justified:

"It has now come to be the view of a majority of courts in this country that one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach. The term 'maliciously' in this connection alludes to malice in its technical legal sense, that is, the intentional doing of a harmful act without justification or excuse, and does not necessarily include actual malice, that is, malice in the sense of spite or ill will.

The right to perform a contract and to reap the profits therefrom, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance. And the intentional interference with the contractual relation without just cause so as to effect a breach of the contract is a wrong for which the wrongdoer may be held accountable in damages. The right of recovery for inducing a breach of a contract is but one instance of the protection which the law affords against unjustified interference in business relations. An existing contract may be a basis for greater protection, but some protection is appropriate against unjustified interference with

reasonable expectancies of commercial relations even where an existing contract is lacking. The unjustifiable character of the alleged wrongdoer's conduct and the harm caused thereby may be equally clear in both instances, but the differentiation between them relates to the scope of the privileges, or the kind and amount of interference that is justifiable in view of the differences in the facts.''

The language of the Washington court in *Calbom* v. *Knudtzon*, 65 Wash. 2d 157, 396 P. 2d 148 (1964), is also appropriate:

"Intentional and unjustified third-party interference with valid contractual relations or business expectancies constitutes a tort, with its taproot embedded in early decisions of the courts of England, * * * (Citations omitted.)

From and with the English decisions, the tort has become engraved upon American law, generally unsullied in principle, although with some case by case distinctions. * * * (Citations omitted.)

\* \* \*

The fundamental premise of the tort—that a person has a right to pursue his valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party—has been crystallized and defined in Restatement, Torts § 766, * * *

\* \* \*

The basic elements going into a prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.''

See also *Russell* v. *Croteau,* 98 N. H. 68, 94 A. 2d 376 (1953); *Dukes* v. *Brotherhood of Painters, etc.,* 191 Tenn. 495, 235 S. W. 2d 7, 26 A. L. R. 2d 1223 (1950); *Chipley* v. *Atkinson,* 23 Fla. 206, 1 So. 934 (1887).[1]

Neither the fact that a contract is not for a fixed period nor the fact that there is no cause of action against the person who is influenced to terminate the contract, or to refuse to perform the agreement is a bar to an action against such an action. *Chipley* v. *Atkinson,* supra: *Wolf* v. *Perry,* 65 N. M. 457, 339, P. 2d 679 (1959); Annot., 84 A. L. R. 43, 60 (1933), 26 A. L. R. 2d 1224, 1258 (1952). The reason for this rule is aptly stated by Mr. Justice Hughes in *Truax* v. *Raich,* 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, 1916D L. R. A. 545, 1917B Ann. Cas. 283 (1915), when he said:

> "* * * It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time, for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn, is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of the others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will. * * *" (Citations omitted.)

We are not unaware of our decision in *Purtle* v.

---

[1] For general discussions of the tort of interference with existing or potential contractual, business or employment relationships, see 45 Am. Jur. 2d 277, Interference, §§ 1—65 (1967); 86 C. J. S. Torts 955, et seq., § 42—44 (1954): 52 Am. Jur. 386, et seq., Torts § 42—44 (1944); Prosser on Torts, p. 950 et seq., §§ 123 & 124 (3rd Ed. 1964); Annot., 29 A. L. R. 532 (1924), 9 A. L. R. 2d 228 (1950).

*Wilcox,* 239 Ark. 988, 395 S. W. 2d 758, but this decision is not in conflict with the principles above stated or the authorities above cited. There, we held that the allegations of the complaint were insufficient to state a cause of action for conspiracy to interfere with a business relationship terminable at will.

Even though one may not be liable as a direct actor in interfering with existing contracts of employment, he may incur liability as a participant in a conspiracy which results in one or more overt acts by others constituting actionable interference. A civil conspiracy is a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another. *Southwestern Publishing Company* v. *Ney,* 227 Ark. 852, 302 S. W. 2d 538. Such a conspiracy is not actionable in and of itself, but recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Ragsdale* v. *Watson,* 201 F. Supp. 495 (W. D. Ark. 1962); 16 Am. Jur. 2d 149, Conspiracy, §§ 43 & 44 (1964). A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence. *Chapline* v. *State,* 77 Ark. 444, 95 S. W. 477. It also may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment. *Wilson* v. *Davis,* 138 Ark. 111, 211 S. W. 152; *Stewart* v. *Hedrick,* 205 Ark. 1063, 172 S. W. 2d 416; *Chapline* v. *State,* supra. Any act done or declaration made by one of the conspirators in furtherance, aid or perpetration of the alleged conspiracy may be shown as evidence against his fellow conspirators. *Wilson* v. *Davis,* supra; *Chapline* v. *State,* supra.

Defamatory statements and false statements have been recognized as improper actions giving rise to a cause of action for interference with contractual relations. *Imperial Ice Co.* v. *Rossier,* 18 Cal. 2d 33, 112 P. 2d 631 (1941); *Dukes* v. *Brotherhood of Painters, etc.,* 191 Tenn. 495, 235 S. W. 2d 7, 26 A. L. R. 2d 1223 (1950); 86 C. J. S. 957, 959, Torts §§ 43, 44 (1954); Annot., 29 A. L. R. 532, 539 (1924). We have held that words, written and published, prejudicing one in his employment, are actionable. *Obaugh* v. *Finn,* 4 Ark. 110, 37 Am. Dec. 773. The fact that the language alleged to have induced a discharge of an employee might be set forth in the complaint in such a manner as to form the basis of an action for libel or slander does not prevent the employee from maintaining an action for wrongful interference with his contract of employment. *Blender* v. *Superior Court of Los Angeles County,* 55 Cal. App. 2d 24, 130 P. 2d 179 (1942). See also *Downey* v. *United Weatherproofing, Inc.,* 363 Mo. 852, 253 S. W. 2d 976 (1953).

A cause of action such as this has been recognized in this state when we held that it did not survive and was not assignable. *Arkansas Life Insurance Co.* v. *American National Life Insurance Co.,* 110 Ark. 130, 161 S. W. 136. So, if, on the basis of the matter before the court on appellees' motion for summary judgment, it can be said that any inference could reasonably be drawn that any of the appellees committed any act, not in legitimate furtherance of his own interests or otherwise privileged, that caused Mason's employer to terminate his contract, or that two or more of them conspired to accomplish that result, and one or more of them committed an act in furtherance of that conspiracy, it was error to grant a summary judgment as to any such appellee.

Appellees state in their brief that the most that can be said is that they, acting in concert, sought to persuade appellant's employer to discharge him. We do not

agree with the appellees, however, that no cause of action can be based on this conduct. The motion upon which the judgment was granted was heard upon answer of appellant to appellees' interrogatories, answers of appellee Dr. Dale Hudson to appellant's interrogatories, the affidavit of appellee Funderburk, with exhibits thereto, a discovery deposition of Funderburk, a discovery deposition of appellant, and an affidavit of appellant. When these are viewed in the light most favorable to appellees a trier of the facts might find:

Fred Mason was elected to the Calico Rock School Board in 1966. In November, 1966, Funderburk, the State Manager of Field Enterprises began to receive communications derogatory to appellant from certain of the appellees. The first was a letter from Dean Hudson, dated November 7, 1966. In that letter, Dean Hudson stated his assumption that it was against company policy for Field's sales personnel to be members of local school boards, and transmitted a report that Mason had promised to see that the superintendent, principal and some of the teachers at Calico Rock were fired and had intimated that some of the school board members there had profited financially from a building program. He stated his belief in the truth of the reports, his opinion that Mason's actions were highly unethical, his desire to buy materials so that Mason would receive no commission and his request to other school administrators not to buy from Mason or sales people under his control. Funderburk later received a letter from Neill Hudson, dated January 23, 1967. In this letter Neill Hudson expressed the opinion that Funderburk would put a stop to the confusion and ill feeling being caused by Mason, if he knew of it. He also stated that he had heard his brother Dean express a doubt that the new library at the Mountain Home School would have the World Book Encyclopedia[2] as long as the situation existed. He also said "Fred Mason is strictly a politician in the

---

[2] This was one of the publications appellant was employed to sell.

lowest sense of the word, and as long as he is on the Board he will keep things in confusion." When Funderburk did not answer, Neill Hudson wrote again on March 4, 1967, requesting a reply. Funderburk responded to the letter of Dean Hudson by calling at his office and discussing the controversy.

On July 21, 1967, Dean Hudson called Funderburk by telephone advising that Mason and others had filed a suit against the superintendent of schools at Calico Rock. This conversation lasted about an hour. Funderburk also received a letter dated July 20 from John Kron in which Kron suggested that Mason be called off or discharged, accusing Mason of maliciously injuring the school system and of saying to a business man that, if he thought things were fouled up, give him (Mason) another year. Connor, the high school principal, also wrote Funderburk on July 20. He accused Mason of harassing the superintendent and of trying to get the superintendent and the board to do things that were illegal.

The filing of the suit by Mason had been brought to Funderburk's attention by his office manager before Dean Hudson's telephone call. Funderburk also received newspaper clippings through the mail and coverage given the filing of this suit in newspapers in Izard county and Little Rock also came to his attention. On July 25, 1967, Funderburk asked Mason to resign from his position with the company, and when Mason refused to do so, gave him written notice of termination of the contract of employment. In his affidavit Funderburk stated that his decision to terminate Mason's employment was prompted by a controversy in which Mason had become involved with some member of the Calico Rock School Board, of which he first became aware by the letter from Dean Hudson dated November 7, 1966.

It is admitted that the only acts taken in this matter by the Field Enterprises Educational Corporation

were through the acts of Funderburk. In answer to an interrogatory requesting that he list with particularity each and every unlawful act L. J. Funderburk committed or in which he participated that resulted in damage, Mason stated that he "wrote derogatory letters; made malicious statements; conspired with the codefendants to deprive the plaintiff of his constitutional rights, including, but not limited to having the plaintiff fired for malicious reasons." None of the matters before the court on the motion for summary judgment supports these general conclusions. Mason stated that he had no trouble with his employer until he found out that Dean Hudson had written to Funderburk. He stated that Funderburk refused to give him copies of the letters written by John Kron and Neill Hudson. Funderburk did request Mason not to call on Mr. Dean Hudson because of the controversy. Although there is some dispute as to whether or not Mason received the full 30-day notice required for termination of his contract, this is not an action against Funderburk and Field Enterprises for breach of contract. We agree with the circuit judge that there is no genuine issue as to any material fact as between Mason and Funderburk and that the summary judgment in favor of Field and Funderburk was properly granted.

To hold otherwise, would be to say that because a conspiracy is successful or contractual relations have been unlawfully interfered with, the person persuaded to act, who is also a victim, is equally liable with the conspirators or interferers.

We have searched the record carefully for any evidence of any acts by Dr. Dale Hudson from which it could be said that he had interfered with appellant's employment or from which it might reasonably be inferred that he entered into a conspiracy with that purpose in view. Dr. Hudson stated that he read a copy of a letter by Dean Hudson *after it was written* and presumably mailed. He also admitted that Neill Hudson

told him of having written to Funderburk some six weeks after the letter was written. There is no other indication that Dr. Hudson even had knowledge of the acts of the others in this regard. This evidence is not sufficient to support any cause of action against him. The summary judgment in his favor must be affirmed.

We cannot agree that there is no genuine issue as to any material fact as to the other appellees or that the evidence before the court on the motion discloses that the actions of Dean Hudson, Neill Hudson, John Kron and Jack Connor do not, as a matter of law, constitute either an unlawful interference, an actionable civil conspiracy or actionable defamation. We find some evidence of acts by these parties which might be found to be a tortious interference with appellant's employment and contractual relations with his employer, or at least support reasonable inferences that they entered into a conspiracy with that purpose. In arriving at this conclusion, we take into consideration that statements in letters written by these appellees might well be found to be defamatory in nature and might even support a cause of action for defamation. In this connection we refer to definitions of the word politician as follows:

WEBSTER'S NEW INTERNATIONAL DICTIONARY, 2nd EDITION

"1. a political person; a schemer; an intriguer

3. * * * often, more or less disparagingly, one primarily interested in political offices or the profits from them as a source of private gain; * * *

SYN. Politician, Statesman. In modern usage politician commonly implies activity in party politics, especially with a suggestion of artifice or intrigue."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

"b: one primarily interested in political offices or profits derived from them as a source of private gain—often used disparagingly

## THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE

"2. a seeker or holder of public office, who is more concerned about winning favor or retaining power than about maintaining principles.

6. a person who seeks to gain power or advancement within an organization in ways that are generally disparaged.

SYN. 4. Politician, Statesman * * * these terms differ particularly in their connotations; politician is more often derogatory * * * politician suggests the schemes and devices of one who engages in (esp. small) politics for party ends or his own advantage: a dishonest politician"

Other language used in letters written by appellees might well be found or shown to be the basis for at least a jury question as to a right of recovery for defamation. See, e. g., *Obaugh* v. *Finn,* 4 Ark. 110, 37 Am. Dec. 773; *West Texas Utilities Co.* v. *Wills,* 164 S. W. 2d 405 (Tex. Civ. App. 1942); *Smith* v. *Pure Oil Co.,* 278 Ky. 430, 128 S. W. 2d 931 (1939); *Chambers* v. *National Battery Company,* 34 F. Supp. 834 (W. D. Mo. 1940); *Scheidler* v. *Brochstein,* 73 S. W. 2d 907 (Tex. Civ. App. 1934). See also Leflar, Legal Liability for the Exercise of Free Speech, 10 Ark. L. Rev. 155, 170, 171 (1956).

Appellees argue that decisions in *New York Times* v. *Sullivan,* 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), and *St. Amant* v. *Thompson,* 390 U. S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968), require a holding

sustaining the summary judgment as to any action for damages for defamation, because the statements relied upon relate to appellant in his capacity as a public official. We cannot say that the statements refer to Mason's official conduct, as a matter of law. Nor can we say that any issue as to malice of the appellees, their knowledge of the falsity of the statements or their recklessness in making them, are foreclosed by the motion for summary judgment and the supporting material.

Appellees' reliance upon the cases of *Raycroft* v. *Tayntor,* 68 Vt. 219, 35 A. 53, 33 L. R. A. 225, 54 Am. St. R. 882 (1896), and *Orr* v. *Home Mutual Ins. Co.,* 12 La. Ann. 255, 68 Am. Dec. 770 (1857), to support the summary judgment is misplaced. The results in both cases are reached solely upon the basis that the parties sought to be charged were engaged in the exercise of their own lawful rights. In the former case, the court recognized the cause of action for interference with an employment contract terminable at will against one interfering without having any lawful right in the matter. In the latter, it was held that where the actors had a lawful right in the matter, no liability arose because of any conspiracy among them. It cannot be said as a matter of law that either Kron, Connor, Dean or Neill Hudson was engaged in the exercise of any lawful right.

The judgment is affirmed as to Funderburk, Field Enterprises Educational Corporation, and Dale Hudson. It is reversed and the cause remanded as to Dean Hudson, Neill Hudson, Kron and Connor.