## JOHNS v. PATTERSON.

### Opinion delivered April 21, 1919.

1. MASTER AND SERVANT—ENTICING AWAY SERVANT.—Acts 1905, p. 726, punishing one who entices a laborer or renter of another to leave his employer or the leased premises before the expiration of his contract, is not in conflict with the Federal peonage act.

2. MASTER AND SERVANT — ENTICING AWAY SERVANT.—Under Acts 1905, p. 726, denouncing the enticement of a servant or tenant from his employment or tenancy before the expiration of his contract, conviction of the misdemeanor as defined in the act is not a prerequisite to bringing a civil action for damages.

3. MASTER AND SERVANT—ENTICING AWAY SERVANT—INSTRUCTIONS.— In an action for enticing a servant to leave employment before expiration of his contract, a requested instruction to find for defendant if the servant had already left plaintiff's employment when defendant hired him is correct.

Appeal from Mississippi Circuit Court, Osceola District; *R. H. Dudley,* Judge; reversed.

STATEMENT OF FACTS.

H. C. Patterson brought an action against F. Johns to recover damages for enticing and inducing Nathaniel Meyers to leave his employment.

According to the testimony of H. C. Patterson himself, he made a contract with Nathaniel Meyers to work a crop for him on the shares during the year 1918. Meyers worked with him until some time in May. He then left Patterson's farm and went to work for the defendant Johns. At the time Meyers left Patterson, he owed the latter $51. Patterson went to see Johns about his employment of Meyers and Johns refused to either turn him off or to pay his account to Patterson. Meyers was not dissatisfied and had had no row with Patterson at the time he left him. Patterson tried to get Meyers to come back and work his crop, but the latter refused to do it.

The defendant Johns was a witness for himself and testified that Meyers had already left Patterson's place when he hired him; that he did nothing to prevent Meyers from going back to Patterson; that Patterson came to see Meyers about going back to his place and that he told him that he would not work for him at all and that there was no use to talk to him any further about it; that he employed Meyers by the day and paid him every night; and that he kept Meyers employed for several months after he had left Patterson.

The case was tried before a jury which returned a verdict for the plaintiff in the sum of $51, and from the judgment rendered the defendant has appealed.

*J. T. Coston,* for appellant.

1. Section 5960, Kirby & Castle's Digest, is unconstitutional in that it imposes a hardship on the laborer by forbidding all others to employ him, while it imposes no penalty and no hardship on the landlord for wrongfully discharging him.

2. It is void because it conflicts with the peonage United States statute and is class legislation. 60 S. E. Rep. 21-25; 1 U. S. Compiled Stat., § 1990; 235 U. S. 143; 95 *Id.* 268; 219 *Id.* 244-5.

3. Johns was not liable until convicted. 29 Am. Rep. 431; 21 Mo. 76; 24 N. Y. Sup. 654; 36 Iowa 654; 36 Iowa 508.

· 4. There was no contract for a "specified time," and Johns was not liable unless there was. The court erred in giving instruction No. 1 and in refusing instructions asked by defendant.

*W. J. Driver,* for appellee.

The courts have settled all the legal propositions and the jury by their verdict have settled the facts.

The statute is not unconstitutional and is not class legislation. 72 Ga. 482; 7 Miss. 245; 104 N. C. 725; 79 Ala. 271; 86 Ark. 436.

HART, J., (after stating the facts). The statute under which this action was brought reads as follows:

"If any person shall interefere with, entice away, knowingly employ, or induce a laborer or renter who has contracted with another person for a specified time to leave his employer or the leased premises before the expiration of his contract without the consent of the employer or landlord, he shall upon conviction before any justice of the peace or circuit court, be fined not less than twenty-five nor more than one hundred dollars, and in addition shall be liable to such employer or landlord for all advances made by him to said renter or laborer by virtue of his contract, whether verbal or written, with said renter or laborer, and for all damages which he may have sustained by reason thereof." Acts of 1905, p. 726.

It is earnestly insisted that this statute is unconstitutional because it conflicts with the peonage act of Congress, which reads as follows:

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in the Territory of New Mexico, or in any other territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of the Territory of New Mexico, or of any other territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or la-

bor of any person as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.''

We do not think that the contention of counsel for the defendant is well taken. A comparison of the two statutes will show that they have wholly different objects in view. Congress undertook to prevent, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in the liquidation of any debt or any obligation. In other words, the gist of the offense denounced by the act of Congress is the holding of persons in unwilling servitude in payment of a debt. *United States* v. *Reynolds,* 235 U. S. 133.

On the other hand the State statute was enacted for the purpose of providing a penal and civil liability against third persons who with knowledge of an existing contract of employment induce the laborer to quit to the injury of the employer. This rule is recognized by Blackstone in the following language:

''The retaining another person's servant during the time he has agreed to serve his present master; this, as it is an ungentlemanlike, so it is also an illegal, act. For every master has by his contract purchased for a valuable consideration the service of his domestics for a limited time; the inveigling or hiring his servant, which induces a breach of this contract, is therefore an injury to the master; and for that injury the law has given him a remedy by a special action on the case; and he may also have an action against the servant for the non-performance of his agreement.'' Lewis' Blackstone, vol. 2, p. 1137, book 3, p. 142.

The same principle is applicable where one man hires another to work on his farm and another man knowing of such contract of employment entices, hires, or induces such laborer to leave the service of his first employer during the time for which he was so employed. A clear statement of the rule is made in *Walker* v. *Cronin,* 107 Mass. 555, as follows:

''It is a familiar and well established doctrine of the law upon the relation of master and servant, that one

who entices away a servant, or induces him to leave his master, may be held liable in damages therefor, provided there exists a valid contract for continued service, known to the defendant. It has sometimes been supposed that this doctrine sprang from the English statute of laborers, and was confined to menial service. But we are satisfied that it is founded upon the legal right derived from the contract, and not merely upon the relation of master and servant; and that it applies to all contracts of employment, if not to contracts of every description.''

Peonage is based upon a condition of compulsory service by the debtor for the payment of his debt. The State statute under consideration has no such purpose; but was enacted for the purpose of fixing the criminal and civil liability of a third party for the violation of contracts of service. Our State statute was based upon the common law rule above stated and was upheld by this court in the following cases: *Tucker* v. *State*, 86 Ark. 436; and *Park* v. *Depriest,* 138 Ark. 86. For other cases sustaining the constitutionality of similar statutes, see Labatt's Master and Servant (6 ed.), vol. 7, secs. 2614-2627, inclusive, and 26 Cyc. 1580.

In the first mentioned case the court held that the words, ''knowingly employ,'' are used in the statute in connection with other words which imply that the employment must be done as an interference with the laborer's performance of his prior contract with another, or as an enticement of the laborer away from his employer, or as an inducement of the laborer to leave the service of his employer. It was further said that it was not intended as a punishment for merely giving employment to a laborer during the unexpired term of his broken contract with another person.

In the last mentioned case it was in effect, held that to constitute enticement of a servant from his master's service, under the statute, the enticement must be made while there exists a valid contract for continued service known to the defendant, or he must be hired by another knowing that his former service is not terminated. It

was expressly held that after the laborer has of his own accord left his first employer and while he is out of such service, he cannot be enticed from it. The essence of peonage is the compulsory service in payment of a debt. So it will be seen that neither the plain language of the statute, nor the construction placed upon it by the court makes it in any sense in conflict with the peonage act of Congress.

It is next contended by counsel for the defendant that under the language of the statute that conviction of the misdemeanor is a prerequisite to the bringing of a civil action. It is contended that it was the intention of the Legislature to make both the penalties depend upon a conviction after a public prosecution. We do not think that contention is in accord with the plain and natural meaning of the language used in the act. The injured person is not a party to the criminal prosecution and cannot control it. The charge might be dismissed without his consent and he could prosecute no appeal from a judgment in favor of the defendant. The doctrine of reasonable doubt prevails on the trial of a criminal case while in a civil action for the tort a preponderance of the evidence in favor of the plaintiff would entitle him to a verdict. A civil action differs in such important particulars from a criminal one that it seems to us that the Legislature would have used plainer and more appropriate language if it had intended a conviction in a criminal court to be a prerequisite to the bringing of a civil action by the party injured. This is especially true when we remember that the party injured already had a common law remedy in a case like this which was complete although changed in some respects by the statute. As bearing on the question, see *Armstrong* v. *State,* 54 Ark. 364.

The next assignment of error is that the judgment should be reversed because the court refused to give the following instruction:

"If you find that the negro had already left the employ of the plaintiff at the time the defendant hired the negro, your verdict will be for the defendant."

This instruction was not covered by any other instruction given by the court. As stated by the court in the cases cited above, after the servant has of his own accord left such service and while he is out of it, he cannot be enticed from it and cannot be knowingly hired while he is in such service. The instruction was therefore correct, and should have been given to the jury. It is obvious that the refusal₀ to give the instruction was prejudicial to the rights of the defendant and for the error in refusing to give it to the jury, the judgment must be reversed and the cause remanded for a new trial.