AMERICAN BUILDING & LOAN ASSOCIATION *v.* STATE.

Opinion delivered January 17, 1921.

1.  NEGLIGENCE—DAMAGES FOR PERMITTING WELL TO REMAIN UNCOVERED.—In a criminal prosecution for permitting a well to remain uncovered on an uninclosed lot, in violation of Kirby's Digest, § 7905, as amended by Acts 1905, No. 119, it is error to assess damages against defendant for injuring livestock; the statute not authorizing it and the owner not being concluded by the proceeding.

2.  NEGLIGENCE—STATUTE AS TO OPEN SHAFTS OR WELLS—CONSTRUCTION.—Under Kirby's Digest, § 7905, as amended by Acts 1905, page 312, making it unlawful to leave "any shaft, well or other opening uncovered on any unenclosed land, and requiring every corporation, company, individual, person or asscoiation, of persons who shall dig any such shaft, well or other opening, whether for the purpose of mining or other purpose," to keep same either enclosed or sufficiently covered, *held* that it is unlawful to leave a well uncovered and uninclosed, though it was not dug for mining purposes.

3.  STATUTES—EJUSDEM GENERIS.—The rule of *ejusdem generis* is invoked in the construction of statutes to aid, and not to control, the construction, and it must yield to another rule, viz., that every part of a statute should, if possible, be upheld and given its appropriate force.

4.  NEGLIGENCE—OPEN SHAFTS OR WELLS.—The statute making it unlawful to leave uncovered openings on uninclosed land applies to a well or opening on a lot in a city or town occupied as a residence.

5.  NEGLIGENCE—OPEN SHAFTS OR WELLS.—An owner of land may be convicted of a violation of the act prohibiting leaving uninclosed and uncovered shafts or wells, though he did not dig the same.

6.  NEGLIGENCE—LIABILITY OF LANDLORD FOR TENANT'S OMISSION.—A landlord who delivers land to his tenant with a well properly covered is not guilty of violating the act against leaving uninclosed or uncovered shafts or wells, though the well became insufficiently covered while the land was in the tenant's possession.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

*W. G. Riddick, W. A. Utley* and *J. W. House,* for appellant.

1. The appellant is not guilty under the statute. Kirby's Digest, §§ 9843-4. The statute is in derogation of the common law and must be strictly construed. 79 Ark. 517. Before a conviction can be sustained under the statute the following facts must appear: (1) The person charged must have dug the well; (2) the person charged must have left or abandoned the well; (3) the well must have been dug or abandoned upon unenclosed property. These are the plain words of the statute without addition or interpretation. There is absolutely no proof nor any contention that defendant dug the well, and there is nothing in the record to show that defendant ever left the well upon uninclosed property. The right to control and use the property was in the tenant during the time of his rent and lease. The word "leave" as used means "to desert or to abandon." 48 So. Rep. 357; 108 Pac. 895. The evidence shows that the well was within three feet of a dwelling house on a lot within the city of Benton and inclosed and the house was occupied; it was not uninclosed, within the meaning of the statute. 95 Ark. 6; 104 *Id.* 624; 45 N. E. 612. It is clear that the statute was never intended to apply to the circumstances of this case. The statute says nothing about the owner of the land. Liability does not depend upon ownership of the land. The person who digs the well and leave it on uninclosed land is liable under the statute, regardless of whether or not he owns the property. Appellant never dug the well, never left it, and the premises were not uninclosed, and the demurrer to the indictment should have been sustained.

2. It was error to assess and award damages in the trial of a criminal case. It was not the intention of the Legislature to reach by this act wells in the yards of private residences. The doctrine of *ejusdem generis* ap-

plies. The intent was to reach shafts, wells and openings upon uninclosed lands for *mining* purposes, and the statute was never intended to apply to wells on private property.

3. It was improper to award damages in a criminal case. The owner was not a party to the suit. Damages are only recoverable in a civil suit. 138 Ark. 425; 54 *Id.* 364.

4. The court erred in its instructions given and refused, and it was error to admit testimony to prove the value of the mules. It was also error to refuse to permit defendant to introduce testimony to show an ordinance of the city of Benton prohibiting the running at large of stock within the city limits of the city of Benton. The evidence was material, and it was error to exclude it.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

Confesses error, as the statute contains no provision for the assessment of damages in a criminal case. The stock must be appraised, which was not done.

SMITH, J. At the trial from which this appeal comes the appellant was found guilty under an indictment charging it with permitting a well to remain uncovered on an uninclosed lot owned by it in the city of Benton. The indictment also alleged that two mules, of the value of $500, the property of S. McLehaney, had fallen into the well and been killed. The verdict of the jury fixed the value of the mules at $500, and judgment for twice that amount was rendered against appellant.

The appellant company had a loan secured by mortgage on the lot in question and acquired title to the lot under a foreclosure proceeding in 1915. Appellant immediately thereafter rented the lot and the house standing thereon to one Witham, who thereafter remained continuously in possession until September 5, 1919, on which date the mules fell into the well.

The well was dug prior to the foreclosure proceeding, and according to appellant was securely covered at the time the property was delivered to Witham.

McLehaney testified that he had been employed to plow the garden, and that he did not know the well was on the premises, that he saw a pile of rubbish on some planks, but Bermuda grass and weeds had grown over the well; that as he drove by the well one mule set her hind foot close to the well and the dirt caved in and that caused the mule to slip and she fell into the well and pulled the other mule in on top of her. The well was within a few feet of the house, and that portion of the premises was uninclosed.

Numerous errors are assigned, and the Attorney General has confessed error on several of the assignments; and, as there is error, the cause must be reversed. We proceed, therefore, to declare the law of the case to the end that it may be properly tried on its remand.

The first error assigned is that it was improper to assess and award damages in the trial of the criminal case. This was error, because the statute does not authorize that procedure. There are certain proceedings in which a fine may be imposed by the jury for a violation of a statute by killing or injuring live stock or damaging property and an assessment of such damages made by the same jury which tries the criminal branch of the case; but there is in those cases a statutory authorization for the proceeding. But here there is an absence of such authority in the statute under which this proceeding was had.

The owner of the mules was not a party to this proceeding, and unquestionably would not have been concluded by the judgment, had appellant been acquitted. The case of *Johns* v. *Patterson*, 138 Ark. 420, was a suit under a statute which made it unlawful to entice away a laborer, and provided for both a fine and for damages. The contention was there made that the suit for damages could not be maintained prior to a conviction for the misdemeanor. We held against that contention, and

in doing so said the injured person was not a party to the prosecution and could not control it; that the charge might be dismissed without his consent, and he could not prosecute an appeal from that judgment; and that the doctrine of reasonable doubt prevails on the trial of a criminal case, whereas in a civil action for a tort a preponderance of the evidence in favor of the plaintiff would entitle him to a verdict. It was not proper, therefore, to assess damages upon the trial of the misdemeanor.

The proceeding was had under the authority of section 7905 of Kirby's Digest, as amended by act 119 of the Acts of 1905 (page 312), which reads as follows:

"It shall be unlawful for any corporation, company, individual, person, or association of persons, to leave any shaft, well or other opening uncovered on any uninclosed land. Every corporation, company, individual, person, or association of persons, who shall dig any such shaft, well or other opening, whether for the purpose of mining or other purpose, shall be required to securely inclose the same or cover and keep covered with strong and sufficient coverings."

The statute, as found in Kirby's Digest, made it unlawful "to leave any shaft or opening uncovered on any uninclosed land." As amended, it was made unlawful "to leave any shaft, well or other opening uncovered on any uninclosed land." The addition of the word "well" after the word "shaft" and of the adjective "other" before the noun "opening," in the first sentence, and the addition of the words "well or other opening" after the word "shaft," in the second sentence, and the substitution of the words "other purpose" for the word "otherwise," would appear to refute appellant's insistence that the penalty of the act is only directed against excavations for the purpose of mining or purposes similar to mining.

Appellant says that the rule *ejusdem generis* is applicable here in the construction of the statute, and that only excavations made in mining, or for similar purposes,

are unlawful. The original statute made it unlawful to dig any such shaft, "whether for the purpose of mining or otherwise." The word "whether" is defined in Webster's New International Dictionary as "A particle used to indicate that what follows is an alternative. * * *"

This court has often recognized and applied the ancient maxim *ejusdem generis* in the construction of statutes. But, like all rules of construction, it is invoked to aid, and not to control, the construction. In the case of *Crabtree* v. *State,* 123 Ark. 68, in speaking of the maxim, we said:

" 'It has never been supposed,' says the Supreme Court of Illinois, 'that the rule required the rejection of the general terms entirely, but only that they should be restricted to cases of the same kind as those expressly enumerated. On the contrary, it must yield to another equally salutary rule of construction, viz., that every part of a statute should, if possible, be upheld and given its appropriate force.' *Misch* v. *Russell,* 136 Ill. 22, 25."

So, here, when section 7909 of Kirby's Digest is read in connection with the amendatory act of 1905, it appears clear that the legislative purpose was to make it unlawful to leave uncovered, on uninclosed lands, any shaft, well or other opening, whether they had been dug for mining purposes or for purposes other than mining.

We conclude, therefore, that the court below was correct in instructing the jury that leaving an uncovered well was unlawful, although the well had not been dug for mining or a similar purpose.

It is next insisted that the act was never intended to apply to a lot in a town or city occupied as a residence. But we find nothing in the act to support that contention. Certainly, the danger which the act seeks to avert is as great in a city or town as elsewhere.

It is next insisted that appellant can not be guilty because it affirmatively appears that it did not dig the well, nor have it dug. The statute does not require this showing. Upon the contrary, it is made unlawful to leave a well uncovered on any uninclosed land; and to

leave uncovered means to permit the well to remain uncovered; and, if this is done, it is not material to inquire who dug the well. The gist of the offense is leaving the well, shaft, or other opening uncovered or unprotected, and that person violates the law who is guilty of that omission.

Appellant insists that under no view can it be guilty because the undisputed testimony shows that the well was securely covered when it turned the premises over to its tenant. This point was not fully developed at the trial, however, as the court had the view—as reflected in the instructions—that the owner was responsible for the safety of the premises, under all circumstances.

In the case of *Clay* v. *El Dorado Hotel Co.,* 121 Ark. 253, we had occasion to consider the liability of the owner of the land to a pedestrian who had fallen into a coal-hole at a time when the premises were in the possession of a tenant to whom they had been leased. The landowner there had covenanted to make the necessary repairs. In that case we approved an instruction which told the jury that, if there was no structural defect in the covering of the coal-hole, the duty of keeping it covered would devolve on the tenant.

So here the duty of keeping the well properly covered rested upon the tenant, provided the well was properly covered when the tenant took possession. The offense is not committed by digging a well, but is committed by leaving a well uncovered. It was the landowner's duty to have had the well properly covered when the premises were turned over to the tenant; and if he was remiss in this, he is subject to the penalty of the statute. If the landowner had complied with his duty in this respect, then he was not responsible for the tenant's failure to keep the property in proper repair. For such failure the tenant is himself liable. 16 R. C. L., page 1063, section 584, of the article on Landlord and Tenant, and authorities there cited.

Other questions are raised in the briefs which can only properly be considered in a suit by the owner of the mules for his damages.

For the errors indicated the judgment is reversed and the cause remanded.