FRAUENTHAL *v.* MORTON.

Opinion delivered June 13, 1921.

1. ANIMALS—UNCOVERED WELL—LIABILITY FOR INJURY TO STOCK.— Under Crawford & Moses' Digest, §§ 375-6, making it unlawful to leave any shaft, well or other opening uncovered on uninclosed land, liability is not dependent on the fact that the person or

corporation against whom liability is sought to be imposed dug the well, but may be incurred by permitting a well dug by another to remain uncovered.

2.  ANIMALS—LEAVING UNCOVERED WELL ON UNINCLOSED LAND.—Liability for injury to stock by leaving an uncovered well on uninclosed land, under Crawford & Moses' Digest, §§ 375-6, is imposed, without reference to the question of negligence, it being sufficient to show that an artificial well was dug on the land, and that it was left exposed in a condition which might endanger live stock.

3.  ANIMALS—UNCOVERED WELL ON UNINCLOSED LAND.—The fact that a well was being used as a source of water supply does not relieve the owner from liability if he permitted it to remain uncovered on uninclosed land.

4.  ANIMALS—INJURY TO STOCK BY OPEN WELL—ACTUAL POSSESSION.—Liability for injury to stock by an uncovered well on uninclosed land, under Crawford & Moses' Digest, §§ 375-6, does not depend upon the owner's actual possession of the land; his constructive possession by reason of ownership being sufficient.

5.  ANIMALS—INJURY TO STOCK BY OPEN WELL—DOUBLE DAMAGES.—Where the jury, under the court's instructions, returned a' verdict for the market value of a horse drowned in an open well on uninclosed land, under Crawford & Moses' Digest, §§ 375-6, it was not error to render judgment for twice the amount of the verdict, in accordance with the statute.

Appeal from Cleburne Circuit Court; *J. M. Shinn,* Judge; affirmed.

*M. E. Vinson,* for appellant.

1.  A verdict should have been directed for defendant. In the absence of statute the general rule is that the owner or occupier of land is under no legal obligation to take special care or pains to the end of keeping it safe for the protection of the animals of others which are allowed to run at large. 57 Ark. 17; 94 *Id.* 458; 116 *Id.* 163; 117 *Id.* 1. Under the proof in this case defendant was not liable and the evidence does not sustain the verdict. 56 Atl. 498, 500; 48 So. Rep. 357-8; 3 Words and Phrases, p. 60; 226 S. W. 1058. Under the testimony plaintiff was remiss in his duty and can not recover.

2.  Under the proof the court erred in its instructions.

3. The judgment is not in keeping with the verdict. The jury must assess the amount of the damages. C. & M. Dig., § 1305; 47 Ark. 120. It was error to render jdgument for double damages. 47 Ark. 120. There was no evidence showing liability to plaintiff, and a verdict should have been directed for defendant.

*Geo. W. Reed* and *Lawrence Neill Reed,* for appellee.

1. The complaint was drawn and action brought under C. & M. Digest, §§ 375-6 and it was an oversight that double damages were not claimed, but by amendment before the trial this was corrected and appellant was not misled at the trial. 57 Ark. 17 has no application and the decision was rendered long before our statute was enacted, but the liability of defendant was recognized in that case by citing 46 Ark. 207; 94 Ark. 458 is not in point.

By digging the well twenty feet deep and leaving it unprotected and uncovered, with water flowing, an agency was created which lured the horse to drink, and, the same being a place of danger, it constituted actionable negligence. 57 Ark. 17; 94 *Id.* 458; 116 *Id.* 163; 117 *Id.* 1; 7 Negl. Compensation Cases Ann., p. 468; 7 N. C. C. C. 495 and note V; 23 N. D. 6; 7 N. C. C. A. 497, note VI. An owner is liable for a dangerous nuisance on his land if injury occurs thereby. 4 A. L. R. 731; 16 R. C. L., § 594, p. 1076. *"Leave"* means to permit or allow to remain. Webster's Un. Dict.; 5 Words and Phrases, p. 1052; 16 Conn. 38-45; 14 N. J. L. 220-4; 43 Am. Rep. 365; 6 Wis. 377-389. The well was a dangerous agency.

2. In rendering a verdict under penalty statutes the jury assess the actual damages and the court doubles or trebles them as the statute provides. C. & M. Dig., § 2509. Many of the questions raised by appellant were settled by this court in 226 S. W. 1058.

McCULLOCH, C. J. Appellant, who was the defendant below, owns by inheritance from his father an unenclosed vacant lot in the town of Heber Springs on which is situated an exposed and uncovered well, according to

the testimony, into which appellee's horse fell and was drowned. This is an action to recover double the value of the horse, under the statute which reads as follows:

"It shall be unlawful for any corporation, company, individual person, or association of persons to leave any shaft, well, or other opening uncovered on any unenclosed land. Every corporation, company, individual person, or association of persons who shall dig any such shaft, well, or other opening, whether for the purpose of mining or other purpose, shall be required to securely enclose the same, or cover and keep covered with strong and sufficient covering." Crawford & Moses' Digest, § 375.

The next section of the statute prescribes a penalty for violation of the preceding section and liability to the owner of the injured stock for the recovery of twice the appraised value thereof.

There is a conflict in the testimony as to whether the excavation was originally a spring of water, but there is testimony tending to show that it was originally a flowing spring at all seasons of the year, and there was also testimony to the effect that it was what was called a "wet weather spring," i. e., water flowing during the rainy seasons. At any rate the testimony is positive to the effect that during the year 1914 or 1915 a man named Brockman, by permission of appellant's father who then owned the lot in question, dug a well at the place in question to afford water for use at a hotel which he was operating a few blocks away. The well was dug about twenty feet deep, and, being on a hillside, it was walled up to the full height on the upper side and to the level of the ground on the lower side. Some of the witnesses say that it was above the ground on the lower side, and the testimony shows that an opening was left on the lower side, so that stock could approach and drink out of the well, and so that water could be conveniently dipped out. Originally, Brockman pumped water from the well with a gasoline engine, but the engine was removed long before appellees horse was drowned, and the well was left

in the condition described above without any protection. Brockman abandoned the use of the well, but it was, according to the testimony, used for watering stock running out on the commons and was also used at times by persons for drinking purposes.

When appellant inherited the property, it was in the condition described, and on a day in the month of August, 1919, appellee's horse, which was allowed to run at large on the commons, went to the well to drink and fell into the well and was drowned. None of the witnesses in the case saw the horse fall in, but one of them saw it a few minutes after it fell, and it was still alive. He and a companion endeavored to rescue the horse, but were unable to do so. After appellee was notified he and several other men finally dragged the horse out, then dead, by means of a rope and pulley suspended over the well so that the horse could be pulled straight out and then swung over. Circumstances indicated that the horse approached the well on the side of the opening and while reaching in for water fell into the well. The water was, according to the testimony, about on a level with the ground. and the horse was found with his head and front feet in the water with his hips on the outside of the well. There was evidence tending to show that the well was at least eight or ten feet deep at the time the horse was drowned. and was twenty feet deep when originally dug.

The principal contention here is that the evidence is not sufficient to sustain the verdict, but we think there is sufficient evidence to establish a state of facts which would constitute liability under the terms of the statute cited above. We decided in the case of *American Building & Loan Assn.* v. *State.* 147 Ark. 80, that liability is not dependent upon the fact that the person or corporation against whom liablity is sought to be imposed dug the well, but that liability is incurred by permitting a well dug by another to remain uncovered. It is also observed from a perusal of the statute that it is made unlawful to leave a well, shaft or other opening uncovered on unenclosed land, and that liability is imposed with-

out reference to the question of negligence. In other words, the statute itself describes the circumstances under which liability is imposed, and it is not a question for the determination of a trial jury whether or not those facts constitute negligence. The statute obviously applies only to artificial excavations, but the testimony in the present case is sufficient to show that this is an artificial well dug on the land, and that it was left exposed in a condition which might endanger ranging live-stock. The fact that the well was being used as a source of water supply does not relieve the owner from liability if he permitted it to remain uncovered and exposed on unenclosed land, for that is the very circumstance upon which the statute expressly declares liability. Our conclusion is that there was evidence sufficient to sustain the verdict.

It is further contended that the court erred in giving an instruction which ignored the question whether or not appellant was in actual possession of the property, it being contended that liability depended upon actual possession. Such is not the effect of the statute, which declares liability against all persons and corporations who "leave any shaft, well, or other opening uncovered on any unenclosed land." It is undisputed that appellant was the owner of the lot at the time the horse was drowned in the well, and it is unimportant to consider what overt acts of ownership were exercised. The lot was vacant and unoccupied, and constructive possession follows the true ownership. There is nothing in the present case to show that there was any adverse claimant to the property, or that any other person was asserting ownership or possession.

The court instructed the jury that, in the event of a finding for the plaintiff, the damages should be assessed at the market value of the horse at the time it was killed. The jury returned a verdict in favor of appellees, assessing damages in the sum of $75, and the court rendered judgment against appellant on this verdict for $150, twice the amount of damages assessed by the jury.

It is contended that the verdict was general, assessing the full amount of the damages to which appellee was entitled. and that the court erred in rendering judgment for double damages. *Hallum* v. *Dickinson*, 47 Ark. 120. The orderly procedure in a trial of the issues under a statute of this kind is to instruct the jury as to the law in regard to double damages and permit the jury to make a finding of the full amount to be recovered. However, in the present case there was an instruction, given without objection, telling the jury to find the market value of the horse, and it is obvious that the jury did not intend by the verdict to find twice the value of the horse. This being true, it was not improper for the court to double the damages in rendering judgment on the verdict. Under the statute there is no discretion with the court or jury about allowing double damages. We think there was no error in this ruling of the court.

Lastly, it is contended that the complaint did not state facts making out a case for the recovery of double damages. We think, however, that the allegations of the complaint constitute a sufficient statement of facts to warrant a recovery under the statute, and appellee was permitted during the progress of the trial to amend the complaint so as to ask for double damages. The assessment of damages is within the testimony. While there was some conflict as to the value of the horse, there is scarcely any dispute that it was worth the sum fixed by the jury in the award of damages. The testimony of appellee and some of his witnesses would, if accepted by the jury, have justified a finding for a much larger sum.

Judgment affirmed.